**ABRAMS et al. v. BENDIX HOME APPLIANCES, Inc.**

United States District Court
S. D. New York.
March 13, 1951.

Austin & Malkan, New York City, Arnold G. Malkan, New York City, of counsel, for plaintiffs.

Goldwater & Flynn, New York City, Oliver T. Cowan, James L. Goldwater and Richard M. Goldwater, all of New York City, of counsel, for defendant.

WEINFELD, District Judge.

In this action to prevent and restrain alleged violation by defendant of the antitrust laws and to recover treble damages thereunder, both jurisdiction and venue are predicated on Section 12 of the Clayton Act, 15 U.S.C.A. § 22.[1]

Service of the summons and complaint was made upon an officer of defendant at its principal place of business, South Bend, Indiana, following which defendant moved (1) to quash the service of process and to dismiss for lack of jurisdiction of the person; and (2) to dismiss for improper venue. The matter originally came on before District Judge Samuel H. Kaufman, who denied the motion to quash and to dismiss for lack of jurisdiction and also denied the motion to dismiss for improper venue but without prejudice to a renewal after plaintiff completed the taking of depositions on such issue. 92 F.Supp. 633. These examinations have since been completed and the defendant now renews its motion.

The question is whether the "venue privilege" under Section 12 of the Clayton Act entitles plaintiff to prosecute this action in this district. This latter section has two functions in antitrust suits against corporations: (1) To determine where process may be served; and (2) to fix the venue. Since

---

1. "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

venue may be had not only in the judicial district whereof the corporate defendant is an inhabitant "but also in any district wherein it may be found or transacts business" the issue is whether the defendant at the time of the service of process transacted business in the Southern District of New York.

Section 12 of the Clayton Act is an enlargement of juridsiction granted under Section 7 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 15, which restricted suits to the district in which the defendant "resides or is found" and so controlled both the place of service of process and venue. United States v. Scophony Corporation of America, 333 U.S. 795, 804, 68 S.Ct. 855, 92 L.Ed. 1091. The Supreme Court held that the expression "transacts business" in Section 12 was intended to broaden the choice of forum available to plaintiffs in antitrust actions in contrast to the narrower concepts enunciated in earlier cases which construed the word "found". Thus, venue is proper when in the ordinary sense the defendant engages in any substantial business operations and the test of venue is the "practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' ". United States v. Scophony Corporation of America, supra, 333 U.S. at page 807, 68 S.Ct. at page 862; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. The purpose of the Congress in enlarging venue was to relieve "persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due." United States v. Scophony Corporation of America, supra, 333 U.S. at page 808, 68 S.Ct. at page 862. The instant application must be considered in the light of the Congressional intent, as declared by the Supreme Court, to extend jurisdiction under Section 12.

As indicated in the Eastman and Scophony cases, venue may be proper in a district, although the corporation may not be subject to service of process there. It follows that the standard to be applied in determining whether a corporation "transacts business" for the purposes of venue under Section 12 is more liberal than that used in deciding the validity of service. As some of the cases phrase it, "The quantum of business which must be transacted by a corporation" to support venue in an antitrust suit "is less than the 'doing business' necessary to sustain the service of process in other cases." Windsor Theatre Co. v. Loew's Inc., D.C., 79 F.Supp. 871, 873; Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corp., 1 Cir., 46 F.2d 623.

In cases of this type precedents do not necessarily control and each case must be governed by its own peculiar set of facts. Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 175 F.2d 900. The Court has examined the voluminous papers submitted on the present application, those offered on the prior motion before Judge Kaufman which were incorporated by reference by the parties, as well as the extensive testimony taken upon the depositions, from which the following facts appear:

Defendant Bendix Home Appliances, Inc., a manufacturer of household appliances, is a corporation organized under the laws of Delaware, having its main office and principal place of business in South Bend, Indiana, branch offices in Chicago, Pittsburgh, Detroit, Cincinnati, and a branch office and factory in Clyde, Ohio.

Bendix sells its products only to independent wholesalers (referred to as distributors) throughout the country and not to dealers or the general public. The only exception to this general policy is that in the four states where it maintains branch offices it acts as wholesaler or distributor, making direct sales to dealers. The distributors, in turn, sell to dealers from whom the ultimate consumer makes his purchase of Bendix appliances. The defendant has no dealings with retailers (except in the four states referred to above); dealers have

never been under franchise or contract with it. Bruno-New York, Inc. is the exclusive distributor in this district and as such it franchises its own dealers. The defendant contends that all contracts with distributors are executed at South Bend, Indiana, and such sales are completed there or in Clyde, Ohio, title passing to the distributor upon delivery to the carrier. However, actual sales in a district are not essential for a finding that business is transacted there. Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corp., supra.

The defendant in summation of its position urges that it has no office, no factory, no warehouse, no sales representative, no telephone and no office directory listing, no real estate, no other tangible property, no corporate records and no books of account in this district; that it is not licensed to do business here, pays no franchise tax, has designated no agent to receive process here, that the company solicits no orders and makes no sales, maintains no repair facilities, engages no personnel in the district. At most, it urges, employees with wide territory to cover occasionally or sporadically pass through this district in the course of their travels. Hence, it concludes that no proper venue may be based upon such "very tenuous" and "completely circumscribed activities".

As against defendant's summary of its position, the plaintiffs counter with the following:

Bendix, for the past several years, has maintained four bank accounts in the Southern District of New York. Although one of these is presently inactive, the remaining three, in defendant's own language, "have at all times been active accounts, each involving the drawing of hundreds of checks annually totaling several hundreds of thousands of dollars." Bendix employs a rotating system whereby for two week periods all obligations wherever incurred and wherever payable are met by checks drawn exclusively on one bank, and it concedes that under this procedure one account in this district is used for all such payments, "regardless of who the payee was or where he was located."

Bendix participates in an arrangement with one of these banks whereby the latter finances the purchase of defendant's products by Telecoin Corporation, the exclusive distributor of Bendix' commercial, as distinguished from consumer, appliances. Under this contract, Bendix, in consideration for the extension of credit to Telecoin, is committed to repurchase the machines from the bank in the event of a default by Telecoin.

During the past two years the defendant has made purchases from twenty-seven suppliers in the State of New York, eight of whom are located in this district. Payments are sometimes made from an account here, depending upon which account of defendant is currently being used for such purposes. One of several registration and transfer agents for the company's securities is located within this district.

The Eastern Sales Manager, whose territory includes New York, was here on Bendix' business on two to three days of each month from January through August 1950, with the exception of July, when he was in this district on one day. These visits entailed conferences with distributors with respect to policy, production, advertising, and, according to the testimony of Bruno's President, "any general subject * * * pertinent to our operation." Like discussions have been held between Bruno and an assistant to this officer. It is undisputed that Bendix' Field Service Supervisor spends five working days per month in New York City, although what portion of his time is spent within this district is unspecified. His duties have been described as "a service to the distributors, to see that they understand the methods and are properly carrying them out". Defendant's Service Manager visits this district but only sporadically for a "day or so" and "in an advisory capacity" concerning service problems. The activities of these employees fall into a consistent and systematic pattern which existed at the time of the commencement of this action and which still obtains.

During the past three years Bendix has conducted schools within this district to acquaint service personnel and distributors

with its products. These sessions are of two to three days duration each year, the most recent of these having been held on July 27th, 1950.

Regional conferences are conducted by Bendix yearly, and the last two were held in this district, most recently in January 1950. Those in attendance included the defendant's President, the Chairman of its Board of Directors, its General Sales Manager, Eastern Sales Manager, and its distributors from the Northeastern States. The subjects discussed related to advertising, pricing, production and distribution.

Bendix' extensive advertising program has numerous contacts in this district. It is conceded that a substantial portion of its advertising budget is allocated to the New York City market. Advertisments placed by defendant appear in publications circulated in this district. Dealers and distributors are supplied by Bendix with leaflets, posters and "mats" for use in local publications. This local advertising is done through a cooperative advertising program which is administered in South Bend. A fund has been created for this purpose, the defendant contributing $4.00 per machine and each distributor contributing $2.00. When a local advertisement appears, the distributor sends a copy to South Bend, Indiana, and is awarded credit to the extent of 50% of the cost. Occasionally, proposed advertisements are submitted to South Bend, Indiana, for approval by defendant before publication. Advertisements and listings appear in telephone directories in the name of defendant, and although it denies participation in these arrangements, contending that such listings were placed by dealers and by Bruno, the distributor, Bendix admits that its consent was given. The trade name "Bendix" may be used by dealers only upon approval of the defendant and in conformity with its instructions.

Although, as already indicated, sales to the consumer-public are made solely by retailers, a warranty which runs directly from Bendix to the consumer accompanies the sale of each appliance. Under that warranty, the replacement of defective parts is the responsibility of Bendix. However, this obligation is actually performed by either Bruno or the dealers. If the latter, the part is submitted to Bruno for approval and, together with those parts replaced by Bruno, it is forwarded to Bendix. Final approval rests with Bendix, and thus the act of the dealer or distributor on behalf of Bendix in the chain leading from manufacturer to the consumer is the act of Bendix.

Three of the five members of defendant's Board of Directors maintain residences and conduct their personal business affairs from their respective private offices in the Southern District of New York. It is conceded that the Chairman of the Board, who is one of the three, communicates by telephone or wire with South Bend, Indiana, from his New York office, but the frequency of such calls does not appear. Defendant's General Counsel, who is also a member of the Board, admittedly has communicated frequently by telephone, telegraph and mail with the company's main office in Indiana. It is contended, however, that his services were rendered as such counsel and details of such activities were declined on the basis of the attorney-client privilege.

The visits by employees and officers in connection with the business and affairs of the defendant and the promotion of its interests; the conduct of schools and conferences relating to marketing and distribution of its products and the maintenance of public good will towards it; making of purchases; maintenance of bank accounts, some of which are regularly used to discharge obligations of the defendant, no matter where incurred; the method of advertising and the sharing of the costs thereof; as well as the other items referred to above, establish a regular pattern of transacting business of a substantial character in this district in the distribution program. The activities of the defendant come well within the facts ruled upon in Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corp., supra, where venue was upheld.

Plaintiff has also claimed that the acts of Bruno are attributable to Bendix and that an agency relationship exists between them by contract. It is not necessary to pass

upon this contention for the facts referred to indicate that Bendix "transacts business" here.

In the briefs submitted on this motion both parties isolate each activity of defendant. Thus cases such as Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594; Trizna v. New York, C. & St. L. R. Co., D.C., 57 F.Supp. 484, bank accounts and transfer agents; Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 45 F.2d 139; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, purchases within the district; De Santa v. Nehi Corp., 2 Cir., 171 F.2d 696, visits by employees, have been cited to the Court. Many, if not the majority, are concerned with the question of validity of service of process and do not arise under the special venue statute here considered. In any event, although these decisions may be of aid, the question of venue cannot be determined by drawing up a "check list" of specific incidents of business done and comparing it with the activities in the particular case. In the Scophony case the Supreme Court expressed disapproval of this practice of "atomization". It is the totality of acts and conduct rather than isolated and fragmented items thereof which must govern. Moreover, as indicated, each case of this kind must be governed by its individual facts and the "practical, nontechnical, business standard" set forth in the Scophony case [333 U.S. 810, 68 S.Ct. 863] must be applied. Application of this liberal test shows that business of a substantial character is transacted in this district—at least to an extent sufficient to sustain venue.

The Court has passed only on the question presented—the motion to dismiss the action because of improper venue. It has not considered such issue as may be raised under the doctrine of forum non conveniens. Section 1404(a) of Title 28 U.S.C.A.; United States v. National City Lines, Inc., 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226.

The cross motion by defendant for an order dismissing the action because of improper venue is denied.

Settle order on notice.