**UNITED STATES of America,**
**Plaintiff,**

v.

**BURLINGTON INDUSTRIES, INC., J. P. Stevens & Company, Inc., United Merchants & Manufacturers, Inc., Clark-Schwebel Fiber Glass Corporation, Exeter Manufacturing Company, Inc., and Coast Manufacturing and Supply Company, Defendants.**

United States District Court
S. D. New York.

Nov. 12, 1965.

7. Celebrezze v. Sutton, 8 Cir., 338 F.2d 417, 422.

8. Celebrezze v. Bolas, supra note 3, 316 F. 2d at 507.

Samuel B. Prezis and Lawrence Kill, Washington, D. C., for plaintiff, Antitrust Division, Dept. of Justice.

Dills & Schelker, New York City, for defendant Coast Manufacturing and Supply Co., Walter G. Schelker, Jr., New York City, of counsel.

HERLANDS, District Judge:

Defendant, Coast Manufacturing and Supply Co., has made a motion to dismiss for lack of jurisdiction over the person, pursuant to Fed.R.Civ.P. 12(b) (2), or, in lieu thereof, to quash the return of service of summons on the grounds: (a) that it "is a corporation organized under the laws of Delaware with its principal office and place of business located in California; it is not found, does not have any agent and does not transact any business within the Southern District of New York, and (b) that * * * [it] has not been properly served with process in this action * * *."

The court denies defendant's motion in all respects for the reasons hereinafter set forth.

Plaintiff alleges in its complaint that this court has jurisdiction over the person of the defendant because it "transacts business" here within the meaning of Section 12 of the Clayton Act, 15 U.S.C. § 22 (1965).

There is no disagreement between the parties as to the test to be applied to determine whether there is personal jurisdiction over this defendant. The basic controversy centers around the application of the rule to the particular facts of this case.

■ The test to be applied is: Does the defendant transact business of a "substantial" character in this District? The words "transact business" are used in the practical, everyday business or commercial sense. United States v. Scophony Corp., 333 U.S. 795, 807, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948).

The defendant admits that each year, from 1956 through 1964, it has made certain shipments of glass fiber industrial fabrics in interstate commerce to customers located in New York. The affidavit of defendant's president, Mr. James A. Merritt, states that "the total value of all shipments of glass fiber industrial fabrics into the State of New York during the last three calendar years by Coast is as follows:

| Year | Value (Sales Price) |
|------|---------------------|
| 1962 | $20,625 |
| 1963 | $28,750 |
| 1964 | $34,941" |

However, the defendant contends that these "occasional" deliveries, this "thimbleful of business—wholly unrelated to the present case—does not meet the test laid down by the Supreme Court of transacting business 'of any substantial character.'"

■ The test of "substantiality" is whether or not the sales in issue would appear to be substantial from the average businessman's point of view, and not what percentage of defendant's total sales they comprise.

Were this not so, a large corporation could, with impunity, engage in the same acts which would subject a smaller corporation to jurisdiction and venue. See Green v. United States Chewing Gum Mfg. Co., 224 F.2d 369, 372 (5th Cir. 1955).

■ Defendant asserts—without citation of supporting authority—that none of the glass fiber industrial fabrics shipped by Coast to customers in New York are in any way involved in the present suit, and that this fact, if found to be true, is of critical significance to the decision on this motion. This court will not place a judicial gloss on the statutory words "transacts business" to make them read "transacts business which is the subject matter of this suit."

Plaintiff submits that, in addition to the above-mentioned sales, defendant has purchased, during the period from 1956 through the ten months ending October 31, 1963, a total of approximately $2,000,000 worth of glass fiber industrial fabrics from companies within the Southern District of New York.

Defendant's president, in a supplemental affidavit, states that the purchase orders for those fabrics were all prepared in, and called for delivery to, California; that those purchase orders were sent by Coast to the respective suppliers at California addresses; and that, to the best of his knowledge and belief, none of the said fabrics were either manufactured in or shipped from the State of New York.

The plaintiff, by supplemental affidavit, alleges that a significant part of the purchases in question were made pursuant to approximately 100 contracts entered into between Coast and J. P. Stevens & Co., Inc. These contracts were prepared and typed in Stevens' New York office on orders obtained from Coast through Stevens' agent or representative in California. The agent to which Coast sent the purchase orders had no authority to enter into such contracts on behalf of Stevens. He forwarded the orders to Stevens' New York office. It is alleged that the procedure followed was that the contract form was prepared in the Stevens' office located within the South-

ern District of New York and was then sent to Coast in Livermore, California for signature and, in turn, mailed back to Stevens' New York office for acceptance.

Payments, pursuant to the terms of the contracts of purchase, were made by Coast to Stevens in this District.

By the terms of the contracts, they were to be governed by the law of New York; contract disputes were to be settled by arbitration in this District; and the parties consented to the jurisdiction of the Supreme Court of the State of New York.

It is not controverted that the foregoing series of transactions is illustrative of the major part of the purchase transactions in question.

Plaintiff alleges, in general terms, that defendant's president, during the period of the alleged conspiracy, made trips to the Southern District of New York for the purpose of transacting corporate business here. The court understands this allegation to be intended as some evidence that the defendant was transacting business within this District at the time this action was commenced. Defendant, on the other hand, by the supplemental affidavit of its president, disputes that assertion.

It is unnecessary to decide whether any one of the above-mentioned factors is determinative, in and of itself.

> "It is the totality of the acts and conduct rather than isolated and fragmented items thereof which must govern. Moreover, * * * each case of this kind, must be governed by its individual facts and the 'practical, non-technical, business standard' set forth in the Scophony case [333 U.S. 810, 68 S.Ct. 863] must be applied." Abrams v. Bendix Home Appliances, Inc., 96 F.Supp. 3, 8 (S.D.N.Y.1951).

█ The continuity and substantial nature of the business activity transacted by the defendant within the Southern District of New York are sufficient, under the provisions of Section 12 of the Clayton Act, 15 U.S.C. § 22 (1965), to confer personal jurisdiction over the defendant on this court.

In light of this finding and conclusion, there is no need to discuss plaintiff's further contention that the defendant has submitted to this court's jurisdiction.

 Having decided that venue is properly laid in the Southern District of New York, the court is of the opinion that it is incontrovertible that extraterritorial service of process was proper. Livermore, California, the location of defendant's principal place of business, was a proper place for service of process under the provisions of Section 12 of the Clayton Act. *Ibid.*

Defendant's motion is hereby denied in all respects. So ordered.