**NATIONAL AUTO BROKERS CORP. et al., Plaintiffs,**

**v.**

**GENERAL MOTORS CORPORATION et al., Defendants.**

**No. 70 Civ. 5421.**

United States District Court, S. D. New York.

June 17, 1971.

Carl E. Person, New York City, for plaintiffs.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendants The

Citizens Bank & Trust Co. of Maryland, Wilmington Trust Co., Suburban Trust Co., and The News-Journal Co.; William E. Hegarty, Allen S. Joslyn, New York City, of counsel.

## OPINION

COOPER, District Judge.

Defendants Citizens Bank and Trust Company of Maryland (Citizens), Wilmington Trust Company (Wilmington), Suburban Trust Company (Suburban) and News-Journal Company (News-Journal) move pursuant to Rule 12(b), F.R.Civ.P. and Section 12 of the Clayton Act, 15 U.S.C. § 22, to dismiss for lack of jurisdiction and improper venue. Motions denied with leave to renew (before the Judge sitting in the motion part) following discovery now being undertaken by plaintiffs.[1] Inquiries as to the nature, range, extent and dollar volume of activities (including but not limited to corresponding balances) of correspondent banks of Citizens, Wilmington and Suburban located in the Southern District of New York are proper.

Wilmington and News-Journal are Delaware corporations; Citizens and Suburban are Maryland corporations. Each is not licensed to do business in New York; maintains no office or place of business in New York; does not own, lease or use any real or personal property in New York; and has no employees, officers or directors who reside in New York. Defendants' Joint Memorandum, p. 8; News-Journal Main Memorandum, p. 6.

However, relatively few contacts are necessary to establish venue. A checklist of negated contacts combined with a failure to take notice of those present—whatever the merits as advocacy strategy—provides the Court with a distorted picture for analysis; it demonstrates that often it is the better part of wisdom to require broad discovery prior to making anti-trust venue determinations. U. S. v. Watchmakers of Switzerland Information Center, Inc., 133 F.Supp. 40, 43 (S.D.N.Y.1955); Abrams v. Bendix Home Appliances, Inc., 96 F.Supp. 3 (S.D.N.Y.1951); 37 N.Y.U.L.Rev. 268, 282 (1962).

## I

The Clayton Act specifically provides venue requirements for corporate[2] defendants:

"Any suit, action, or proceeding under the anti-trust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business * * *"

The term "transacts business" was intentionally added by Congress to broaden venue in anti-trust cases and to further the sound remedial policy of allowing an aggrieved party a larger number of available forums in which to litigate. It is undisputed that the "transacts business" test is broader than either local process or Clayton Act "found" or "doing business" tests. Eastman Kodak Co. of N. Y. v. Southern Photo Materials Co., (273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927)); 1 Moore's Federal Practice, 0.144 [15] at 1668–1669; 37 N.Y.U.L.Rev. 268, 280–81, 283 n. 107.

"Thus, by substituting practical, business conceptions for the previous hair-splitting legal technicalities encrusted upon the 'found'—'present'—'carrying on business' sequence, the

1. Accord: Memorandum of Frankel, J., May 27, 1971; Endorsement of Tenney, J., May 13, 1971.

2. For individual, non-corporate defendants Section 4 of the Clayton Act (15 U.S.C. § 15) provides:
"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy * * *"

[*Eastman Kodak*, supra,] Court yielded to and made effective Congress' remedial purpose. Thereby it relieved persons injured through corporate violations of the anti-trust laws from the 'often insuperable obstacles' of resorting to distant forums for redress of wrongs done in the places of their business or residence." United States v. Scophony Corp. of America, 333 U.S. 795, 808, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948).

The essence of the "transacts business" test is that it is fair, just and proper to require a corporation to defend an action where it derives benefit of a "substantial character in a more or less permanent fashion," a "practical, factual concept which the court should determine by appraising the facts in their ordinary, untechnical meaning within the context of the unique circumstances of a particular situation." *Scophony*, supra, at 819, 68 S.Ct. 855 (concurring opinion of Frankfurter, J.); Albert Levine Associates v. Bertoni and Cotti et al., 309 F.Supp. 456 (S.D.N.Y. 1970); 1 Moore's Federal Practice ¶0.144 [15] at 1669.

■ In determining the unique circumstances of a particular situation broad discovery is frequently essential. Where the law clearly requires ultimate inquiry into such circumstances, it is obvious that a searching inquiry cannot be foreclosed at the discovery stage. The courts have rejected numerous theories seeking to limit venue (and hence discovery) including the "hair-splitting legal technicalities" of the old "found—present—carrying-on business tests," *Scophony, supra,* at 807–808, 68 S.Ct. 855, and the passage of title, B. J. Semel Associates, Inc. v. United Fireworks Manufacturing Co., 122 U.S.App.D.C. 402, 355 F.2d 827 (1965); Sunbury Wire Rope Manufacturing Company v. United States Steel Corporation, 129 F. Supp. 425 (E.D.Pa.1955); see generally, Raul International Corp. v. Nu-Era Gear Corp., 28 F.R.D. 368 (S.D.N.Y.1961).

■ The chief indicator of "transacts business" ordinarily has been whether the dollar volume of business benefit viewed objectively and without reference to the total volume of business of any particular corporation is substantial from the point of view of the average businessman. B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co., 122 U.S.App.D.C. 402, 355 F.2d 827 (D.C. Cir.1965); United States v. Burlington Industries, Inc. et al., 247 F.Supp. 185 (S.D.N.Y.1965); Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 18 F.R.D. 13 (E.D.Pa.1955), rev'd on other grounds, 230 F.2d 511 (3d Cir. 1956); Green v. United States Chewing Gum Mfg. Co., 224 F.2d 369 (5th Cir. 1955). The test does not require that the activities to be counted for venue purposes be among those which are within the subject matter of the suit. *Burlington Industries*, supra, 247 F.Supp. at 187.

■ Additionally, the test specifically has not depended on the size of the corporation or over-all activities or whether the relevant corporate activities comprise a large percentage of the market. To do so would ordinarily permit liberal venue placement as against small corporations but apply a stricter test more favorable to larger corporations which may in fact have greater power and thereby greater involvement or influence in the alleged illegal activity. *Chewing Gum,* supra; *Burlington Industries,* supra. The remedial policies of the antitrust laws are ordinarily best served by disallowing such treatment which may act to discriminate against small corporations on the issue of venue.

II

A brief description of correspondent activities is found in Bank of America v. Whitney Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594 (1923) (opinion by Mr. Justice Brandeis for the unanimous court). The case, heavily relied upon by movants, discusses the relationship of the defendant Whitney Bank, a national bank with its banking house and usual

place of business at New Orleans, Louisiana, to six other banks

"Whose places of business are located in New York, and of transactions conducted through them. Each of these six banks is what is commonly called a correspondent of the defendant. In each the Whitney Central carries continuously an active, regular deposit account. But its transactions with these banks are not limited to making deposits and drawing against them. Superimposed upon the simple relation of bank and depositor are numerous other transactions which necessarily involve also the relationship of principal and agent. These additional transactions conducted by the correspondent banks include: Payment in New York of drafts drawn, with accompanying documents, against letters of credit issued by defendant at New Orleans; the receipt in New York from brokers and others of securities in which the Whitney Central or its depositors are interested, and the delivery of such securities; the making of payment to persons in New York for such securities; the holding of such securities on deposit in New York for long periods and arranging substitution of securities; the cashing, under specific instructions from defendant given in New Orleans, of checks drawn on it by third parties with whom it had no banking or deposit relations; the receipt in New

York from third parties, with whom defendant apparently had no banking relations, of deposits of moneys for account of its customers.

*The Whitney Central had what would popularly be called a large New York business. The transactions were varied, important and extensive."* 261 U.S. 171, 172–173, 43 S.Ct. 311 (emphasis added).

To begin with, the *Whitney Bank* case, not an anti-trust case, held that the court had no jurisdiction and that service of process solely upon the defendant's president while temporarily in New York was improper. In the instant case, each movant bank was served in its home state. The narrow issue here is *anti-trust venue* under the *specific* anti-trust "transacts business" test totally inapplicable in the *Whitney Bank* case.

The relevant movants seek to merge the "doing business" and "actual presence" jurisdictional tests of 1923, the year of the decision in *Whitney Bank*, with the anti-trust "transacts business" test. In doing so, we feel they have neither properly interpreted *Whitney Bank*, *Eastman Kodak*, supra, *Scophony*, supra (decided on the specific anti-trust venue issue subsequent to *Whitney Bank)*, nor almost a half-century of case law which has found the anti-trust "transacts business" test to be more liberal—an approach more consistent with express Congressional intent which we have already discussed.[3]

3. Movants' reliance on Alex Friedman v. United States Trunk Co., 204 F.Supp. 366 (S.D.N.Y.1962), aff'd per curiam, 367 F.2d 583 (2d Cir. 1966) is misplaced. Judge Sugarman merely noted that the *general venue* "doing business" requirements of 28 U.S.C. § 1391(c) were not stricter than the *anti-trust venue* requirements under the "transacts business" requirements of 15 U.S.C. § 22. *Compare* Albert Levine Associates v. Bertoni & Cotti et al, 309 F.Supp. 456, 460 (S.D.N.Y.1970). Judge Sugarman did not suggest that the old "doing business" test for *venue* purposes, disapproved expressly in *Eastman Kodak* and *Scophony*, be resurrected. Judge Sugarman found the appropriate standard(s) satisfied as to the first claim in *Friedman*

concurring with Judge Bonsal's statement of the traditional *Eastman Kodak* rule in an earlier disposition in the same case. 30 F.R.D. 148, 150 (S.D.N.Y. 1962). The *per curiam* affirmance cannot be read in any way but as approving *Eastman Kodak*. Similarly inapplicable is Bourgeois v. Banque Francaise Du Commerce Exterieur, 250 F.2d 584 (2d Cir. 1958), a dismissal for want of jurisdiction. The *per curiam* affirmance rests exclusively on *Whitney Bank* and two noted service of process cases, International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

However, to the extent applicable, *Whitney Bank* strongly suggests that the activities and location of a correspondent bank [4] are a proper subject of inquiry in determining whether the venue of an action is properly laid as against a principal bank.[5]

Despite the recognition of the *Whitney Bank* court that Whitney Bank "had no place of business in New York," "[n]one of its officers or employees was resident there" and the "New York business [was not] attended to by any one of its officers or employees resident elsewhere," the court noted that the Whitney Bank "had what would popularly be called a large New York business. The transactions were varied, important and extensive." 261 U.S. 171, 173, 43 S.Ct. 311.

Even before *Eastman Kodak* and *Scophony*—even without the framework of liberal remedial policy of the anti-trust laws—the Supreme Court unanimously recognized the substantial impact and nature of correspondent bank activity for the banking community in general and the "large," "varied," "important," and "extensive" nature of the business transactions in New York by correspondents under the facts of *Whitney Bank*. This is true whether or not each element of the correspondent relationship met the formalities of a technical principal-agent relationship (many of which contain elements of agency). *Whitney Bank*, supra, at 172–173, 43 S. Ct. 311.

*Eastman Kodak* and *Scophony* make the observations in *Whitney Bank* all the stronger. The test is practical, realistic, and whether the principal is licensed to do business in the District is not a decisive criterion. It is and was foreseeable that correspondent activities would constitute a part of the banking business and be of benefit to the movant banks. It would in no way be unfair to require the movant banks to litigate in a forum from which they derive substantial and continuous benefit (if such is shown on discovery to have been the case).

The public interest reflected in the strong remedial policies of the anti-trust laws generally and the broad venue statute in particular, the practical effect of a principal bank deriving benefit in a district from the correspondent bank's activities there, the fairness of permitting the principal to be sued there are among the factors which we find controlling.

■ On this issue of apparent first reported instance we hold: Generally, the activities of a correspondent bank are discoverable and are to be considered activities of the principal for the purpose of determining whether the principal "transacts business" within a District as contemplated by Section 12 of the Clayton Act.

We need not presently decide such other questions as the application of the objective dollar volume test of "trans-

4. Movants additionally describe correspondent activities by quoting from the affidavit of a Vice-President of correspondent Manufacturers Hanover Trust Company in *Bourgeois*, supra, which we have distinguished on the law [Joint Memorandum, p. 13, footnote]:
   "[i]n the ordinary operation of said account, it [the correspondent] receives deposits, makes collections for Banque Francaise [the principal], pays checks and drafts, and makes other payments upon the instructions of Banque Francaise, received by mail or by cable; it accepts drafts drawn under letters issued by Banque Francaise; issues letters of credit at the request of Banque Francaise; purchases banker's acceptances for the account of Banque Francaise; receives and delivers shipping documents, documents of title and other securities as directed by Banque Francaise and extends credit to Banque Francaise."

5. Movants do not argue that the Supreme Court's description of the activities of correspondent banks in *Whitney Bank* is inaccurate or inapplicable. However, these activities may not be complete or identical for each correspondent and principal relationship, and variations may properly be brought out by discovery.

acts business" to the facts of this case. Such questions are best considered, taking into account the full facts of this case and the matter presently in the file, following discovery.

We regard discovery proper with respect to the News-Journal Company in order to develop a complete picture of relevant activities in the Southern District of New York. We so direct.

So ordered.