## INDIAN HEAD INC., Plaintiff,

v.

## ALLIED TUBE & CONDUIT CORPORATION and National Fire Protection Association, Defendants.

### No. 81 Civ. 6250 (JES).

United States District Court,
S.D. New York.

April 1, 1983.

Kaye, Scholer, Fierman, Hays & Handler, New York City, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for plaintiff; Joshua F. Greenberg, Fredric W. Yerman, Richard A. Strassman, Richard J. Cutler, New York City, Trammell E. Vickery, Atlanta, Ga., of counsel.

Grand & Ostrow, New York City, for defendant Allied Tube & Conduit Corp.; Frank Wright, New York City, of counsel.

Barrett Hanna Daly & Gaspar, Washington, D.C., for defendants.

Tighe, Curhan, Piliero & Case, Washington, D.C., for defendant Nat. Fire Protection Ass'n; Daniel J. Piliero II, Washington, D.C., of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff, Indian Head Inc. ("Indian Head"), a Delaware corporation, commenced this action against Allied Tube & Conduit Corp., a Delaware corporation, and National Fire Protection Association ("NFPA"), a Massachusetts corporation, contending that defendants have violated § 1 of the Sherman Act, 15 U.S.C. § 1. NFPA has moved to dismiss for lack of in personam jurisdiction, improper venue and insufficient service of process.

Section 12 of the Clayton Act ("§ 12"), 15 U.S.C. § 22, provides: [1]

---

1. Section 12 controls both jurisdiction and venue in antitrust actions. *See Eastman Kodak Co. v. S. Photo Materials Co.,* 273 U.S. 359, 372, 47 S.Ct. 400, 403, 71 L.Ed. 684 (1927). The statute is remedial and was intended to provide plaintiffs with a larger number of available forums in which to litigate their antitrust claims. *Id.* at 372–73, 47 S.Ct. at 403; *United States v. Scophony Corp.,* 333 U.S. 795, 808, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948); *National*

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Indian Head contends that NFPA's substantial activities in this district constitute the transaction of business within the meaning of § 12.[2] For the reasons which follow, the Court agrees.

From December 1976 through December 1981 NFPA, through Phoenix Films[3] ("Phoenix") maintained and operated a film library at 468 or 470 Park Avenue South in New York City,[4] which library generated over $100,000 in revenue. A listing for the library appeared in the building directory for 468 Park Avenue South. Moreover, telephone listings for the library appeared in the 1980–81 and 1981–82 Manhattan telephone directories. See Sunrise Toyota, Ltd. v. Toyota Motor Co., 55 F.R.D. 519, 526 n. 3 (S.D.N.Y.1972); Raul International Corp. v. Nu-Era Gear Corp., 28 F.R.D. 368, 372 (S.D. N.Y.1961); see also Abrams v. Bendix Home Appliances, 96 F.Supp. 3, 7 (S.D.N.Y. 1951). Not only was NFPA aware of these listings, but it held itself out as being present in New York City at that address and telephone number in its widely disseminated catalogues and publications.

In addition to the income generated by the film library, NFPA has derived substan-tial revenue from other activities in this district.[5] In the years 1980 and 1981 respectively, it received approximately $483,-000 and $473,000 from the sales of its publications, books, films and other materials. In addition, in 1981, it received about $25,-000 in advertising revenues from New York State. From 1979 through 1981 it received over $39,000 per year in membership dues from the Southern District of New York; and during the past three years, it received an average of $48,000 per year in contributions from this district. It also has obtained a $20,000 research grant from Dutchess County,[6] which is located in the Southern District. The Court finds that NFPA's sales in this district constitute a continuous course of business which cannot be dismissed as insubstantial. See City of Philadelphia v. Morton Salt Co., 289 F.Supp. 723, 725 (E.D.Pa.1968).

In addition to its sales, NFPA's purchases in this district also have been substantial, a factor which several courts have found sufficient to satisfy the "transacting business" standard set forth in § 12. In re Chicken Antitrust Litigation, 407 F.Supp. 1285, 1295–96 (N.D.Ga.1975); McCrory Corp. v. Cloth World, Inc., 378 F.Supp. 322, 324 (S.D. N.Y.1974); Fashion Two Twenty, Inc. v. Steinberg, 339 F.Supp. 836, 841 (E.D.N.Y. 1971). NFPA spent approximately $448,000 over the past five years in the preparation, distribution and sales of film-related catalogs and promotional materials. Moreover, during the past three years, it purchased

---

Auto Brokers Corp. v. General Motors Corp., 332 F.Supp. 280, 281 (S.D.N.Y.1971).

**2.** The "transacts business" test involves the "practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character.'" United States v. Scophony Corp., 333 U.S. at 807, 68 S.Ct. at 861; see also Albert Levine Assoc. v. Bertoni & Cotti, 309 F.Supp. 456, 458 (S.D.N.Y.1970).

**3.** In December, 1976, NFPA executed a letter agreement which expressly authorized Phoenix to operate its film library and to conduct its film rental and preview program. Exhibit E to Memorandum of Plaintiff Indian Head Inc. in opposition to the Motion of Defendant [NFPA] to Dismiss the Complaint.

**4.** It is not clear from NFPA advertisements which is the correct address.

**5.** The test of substantiality is whether the dollar volume of business, viewed objectively and without reference to the total volume of business of the corporation, is substantial from the point of view of the average businessman. National Auto Brokers Corp., 332 F.Supp. at 282; United States v. Burlington Indus. Inc., 247 F.Supp. 185, 187 (S.D.N.Y.1965).

**6.** The grant was made pursuant to an agreement executed by Dutchess County on December 4, 1978.

over $411,000 in goods and services in connection with the processing of its films. It also spent over $18,000 for promotional services and almost $60,000 for services rendered by Phoenix Films in connection with the operation of its film library.

In addition to its purchases and sales, NFPA has a variety of other contacts with this district which are far from inconsequential and sporadic. It has sponsored at least four seminars here over the past four years, which seminars were attended by approximately 438 people. The NFPA Marine Chemist Qualification Board has twice met in this district, and at least four other official NFPA committee meetings have been held here since 1979. NFPA also conducted three major on-site investigations of fires in this district during 1979 and 1980. The fact that NFPA staff members have entered this district in connection with these seminars, meetings and investigations is a significant factor in finding that NFPA transacts business here. *See Arnstein v. Manufacturing Chemists Association*, 414 F.Supp. 12, 13–14 (E.D.Pa.1976); *Abrams*, 96 F.Supp. at 7. Moreover, NFPA has admitted to entering into 21 contracts with residents of the Southern District of New York. *See United States v. Burlington Industries, Inc.*, 247 F.Supp. 185, 187–88 (S.D.N.Y.1965); *Friedman v. United States Trunk Co.*, 30 F.R.D. 148, 150 (S.D.N.Y.1962).

Finally, over the past two years, NFPA membership from this district has averaged 814 regular individual members (2.6% of the total regular membership) and 16 professional and trade organization members (10.6% of the total organization membership). Also, at least 25 persons from this district (1% of all NFPA volunteers) serve on various NFPA boards and committees.[7] These factors, while not themselves dispositive, are also relevant in determining whether venue and jurisdiction are proper. *See Abrams*, 96 F.Supp. at 7.

The Court therefore concludes that NFPA has transacted business in this district within the meaning of § 12. While NFPA argues that a more stringent standard for determining jurisdiction and venue should apply because it is a non-profit, voluntary membership association,[8] none of the cases it relies upon support that proposition.[9] *See Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.*, 635 F.2d 118, 127 (2d Cir.1980), *aff'd*, 454 U.S. 1137, 102 S.Ct. 991, 71 L.Ed.2d 288 (1982).

---

7. This fact is in dispute. Indian Head contends that 124 persons (5% of all NFPA volunteers) serve on various NFPA boards and committees.

8. NFPA describes itself as "an independent, voluntary membership, non-profit organization devoted to protecting life and property from the dangers of fire." NFPA's public service programs fall into two categories: technical and educational. "The technical activities of the organization are aimed at developing, publishing and disseminating model public safety standards intended to eliminate or minimize danger" to persons and property from fire. The educational activities are aimed at raising the public awareness and educating the general public concerning fire safety. Memorandum in Support of Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, Improper Venue, and Insufficiency of Service of Process, at 2.

9. While in each of the cases NFPA relies upon the Court found that the association had not transacted business, it is clear that the association's nonprofit status was not a dispositive or even a significant factor. Rather, the court considered the totality of the association's contacts with the district in resolving the jurisdictional issue. Moreover, each of those cases is distinguishable because the contacts with the district were far more insubstantial, sporadic and tenuous than NFPA's contacts here. *See, e.g., Bartholomew v. Virginia Chiropractors Ass'n, Inc.*, 612 F.2d 812 (4th Cir.1979), *cert. denied*, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426 (5th Cir.1977); *Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n*, 516 F.Supp. 378 (S.D.N.Y.1981); *Friends of Animals, Inc. v. American Veterinary Medical Ass'n*, 310 F.Supp. 620 (S.D.N.Y.1970). Indeed, several courts have sustained jurisdiction and venue under § 12 based upon far fewer activities than those in which NFPA is involved in this district. *See, e.g., Levin v. Joint Comm'n on Accreditation of Hospitals*, 354 F.2d 515, 517–18 (D.C.Cir.1965) (per curiam); *Sherman College of Straight Chiropractic v. American Chiropractic Ass'n*, 534 F.Supp. 438 (N.D.Ga.1982); *Health Care Equalization Comm. v. Iowa Medical Soc'y*, 501 F.Supp. 970 (S.D.Iowa 1980).

Finally, the Court finds that the exercise of jurisdiction over NFPA is consistent with principles of due process. NFPA's substantial and continuous activities within this district are sufficient to support the conclusion that it has purposefully availed itself of the privilege of conducting its business within this district, and has every reasonable basis to believe that it is subject to suit here, *see World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945), even with respect to actions which may not arise out of the business which it has transacted in this district. *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Authority,* 442 F.Supp. 1201, 1204 (S.D.N.Y.1978); *National Auto Brokers Corp. v. General Motors Corp.,* 332 F.Supp. 280, 282 (S.D.N.Y.1971); *Burlington Industries,* 247 F.Supp. at 187.

Accordingly, NFPA's motion to dismiss for lack of in personam jurisdiction, and improper venue and insufficient service of process is denied.

SO ORDERED.