**EXPOCONSUL INTERNATIONAL, INC., a New Jersey Corporation, Plaintiff,**

v.

**A/E SYSTEMS, INC., a/k/a A/E/C Systems, Inc., a Connecticut Corporation, Defendant.**

**No. 88 Civ. 0877 (JMW).**

United States District Court, S.D. New York.

Jan. 13, 1989.

John J. Jones, Hightstown, N.J., James E. Rosini, William A. Tanenbaum, Kenyon & Kenyon, New York City, for plaintiff.

John C. Hilton, John C. Linderman, McCormick, Paulding & Huber, Hartford, Conn., Albert Robin, Robin, Blecker & Daley, New York City, for defendant.

### MEMORANDUM AND ORDER

WALKER, District Judge:

Defendant, A/E Systems Inc. ("A/E Systems") has moved to dismiss the complaint in this action on the basis that venue is improper. Alternatively, the defendant seeks to have the matter transferred to the District of Connecticut on the theory of *forum non conveniens.* Finally, the defendant seeks to have either plaintiff's Sherman Act claims dismissed for failure to state a claim or to have plaintiff submit a more definite statement with respect to these claims. For the reasons stated below, defendant's motion is denied in its entirety.

### I. *Background*

#### A. The Parties

The A/E/C industry is the building design and construction industry in which architects, engineers and contractors or construction architects are involved. The defendant, A/E Systems, a Connecticut corporation having offices in Connecticut and Pennsylvania, runs the A/E/C Systems Show, an annual tradeshow where vendors of computers and other automation systems—who rent space from A/E Systems—display their products to attending architects, engineers and contractors. In connection with its tradeshows, A/E Systems is the owner of three federal trademark registrations: "A/E/C Systems," "A/E Systems" and "A/E Systems Report." The registrations disclaim the exclusive right to use the word "systems" apart from the stylized form in the registrations.[1]

Plaintiff, Expoconsul International, Inc. ("Expoconsul"), a New Jersey corporation, is a competitor of defendant. In December, 1987, plaintiff sponsored its first A/E/C tradeshow, entitled "1987 AEC EXPO," at the Jacob Javits Convention Center in New York City. Plaintiff has planned future tradeshows at the Javits Center through 1992.

On May 20, 1987, A/E Systems sent a letter to Expoconsul, the validity of which has not been disputed, in which A/E Systems claimed that: (1) Expoconsul had no right to use "AEC Expo" as the name of its tradeshow; (2) Expoconsul had no right to use "AEC Systems" in a generic sense; (3)

---

1. Complaint, Ex. B, C, D. The validity of these exhibits has not been disputed.

Expoconsul's actions constituted trademark infringement and unfair competition under both state and federal law; (4) Expoconsul was attempting to pass itself off as the sponsor of the A/E Systems show; and (5) Expoconsul was causing confusion among A/E/C tradeshow exhibitors and attendees. A/E Systems threatened litigation against Expoconsul unless Expoconsul agreed to comply with A/E System's demands. Complaint, Ex. F.

### B. The Underlying Action

On February 8, 1988, plaintiff instituted the present action against defendant. Count I of the complaint alleges that defendant violated § 1 of the Sherman Act, 15 U.S.C. § 1, by

> deliberately and intentionally conspiring and contracting, ... in restraint of trade, with A/E/C systems tradeshow exhibitors, attendees, speakers, suppliers and others to boycott and otherwise refuse to deal with Expoconsul with respect to Expoconsul's A/E/C systems tradeshow.

Complaint, ¶ 31. Count II of the complaint alleges that defendant violated § 2 of the Sherman Act, 15 U.S.C. § 2, because the acts taken by A/E Systems represent

> a dangerously successful and intentional monopolization, attempt to monopolize, and combination and conspiracy with A/E/C systems tradeshow exhibitors, attendees, speakers, suppliers and others to monopolize interstate commerce in the relevant market and submarkets for A/E/C systems tradeshows.

Complaint, ¶ 33.

In addition to the antitrust claims, the complaint sets forth six other causes of action under both federal and state laws.[2] All of these claims stem from the premise that A/E Systems has intentionally and deliberately monopolized the market for A/E/C systems tradeshows, and has attempted to exclude plaintiff from that market through use of an invalid and unenforceable trademark. Complaint, ¶ 19.

Defendants have moved to dismiss the complaint on the basis that venue is improper in this district.[3] Alternatively, defendant seeks to have this matter transferred to the District of Connecticut on the theory of *forum non conveniens.* In addition, defendant seeks either a dismissal of the first two counts of the complaint for failure to state a claim or, alternatively, a more definite statement with respect to those claims.

### II. *Discussion*

### A. Venue

For this action, the Court must look both to the general venue statute, 28 U.S.C. § 1391(b) and (c), and the specific venue provisions of § 12 of the Clayton Act.

For non-diversity cases, the general venue statute, 28 U.S.C. § 1391, provides:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all *defendant's reside,* or in which the *claim arose,* except as otherwise provided by law.
>
> (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is *doing business,* and such judicial district shall be regarded as the residence of such corporation for venue purposes.

28 U.S.C. § 1391(b), (c) (emphasis added). Section 12 of the Clayton Act states that venue for a corporate antitrust defendant is proper in the judicial district where the defendant is an "inhabitant," is "found," or "transacts business." 15 U.S.C. § 22. Courts have interpreted the term "inhabitant" to mean being incorporated under

---

**2.** Count III: Declaratory Judgment for Trademark Invalidity and Unenforceability; Count IV; Declaratory Judgment for Non–Infringement of Trademarks; Count V: Declaratory Judgment regarding Unfair Competition; Count VI: Cancellation of Federal Trademark Registrations; Count VII: Tortious Conduct; and Count VIII: Unfair Competition.

**3.** Defendant concedes that this Court has personal jurisdiction over the defendant pursuant to § 12 of the Clayton Act, 15 U.S.C. § 22, which provides for nationwide personal jurisdiction over corporate antitrust defendants. Defendants also concede that this Court has *in personam* jurisdiction under the provisions of the New York C.P.L.R. and in accordance with principles of pendent jurisdiction.

the laws of the jurisdiction, and the term "found" to mean "doing business." *General Electric Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037, 1041, n. 5 (S.D.N.Y.1982).

Thus, the first two bases for jurisdiction under the Clayton Act mirror the general venue statute, § 1391(b) and (c). It is the final alternative in § 12 of the Clayton Act—the transacting business alternative— that sets section 12 apart from section 1391(c). That final alternative "means that under most circumstances, venue will be easier to satisfy under section 12 than under the general venue provisions ..." *Id.* Congress added the "transacting business" criterion in 1914 in order "to provide plaintiffs with a larger number of forums in which to litigate their antitrust claims." *Indian Head Inc. v. Allied Tube & Conduit Corp.*, 560 F.Supp. 730, 730 n. 1 (S.D.N.Y.1983), *citing Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 372–3, 47 S.Ct. 400, 403, 71 L.Ed. 684 (1927). The provision has been broadly interpreted with this goal in mind. The Supreme Court has stated that the "transacting business" standard is "[t]he practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character.'" *United States v. Scophony Corp.*, 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948). Thus, "by substituting practical, business conceptions for the previous hair-splitting legal technicalities ... the Court yielded to and made effective Congress' remedial purpose." *Id.* at 808, 68 S.Ct. at 862.

The test of substantiality is "whether the dollar volume of business, viewed objectively and without reference to the total volume of business of the corporation, is substantial from the point of view of the average businessman." *Indian Head, supra*, 560 F.Supp. at 731 n. 5. *See also Fashion Two Twenty, Inc. v. Steinberg*, 339 F.Supp. 836, 841 (E.D.N.Y.1971); *United States v. Burlington Industries, Inc.*, 247 F.Supp. 185, 187 (S.D.N.Y.1965). From this view-

point, as little as $30,000 of sales is substantial, *Fashion Two Twenty, Supra* 339 F.Supp. at 841, and sales that constitute less than 2% of the defendant's business is not insubstantial. *J. & B. & S. Restaurant Corp. Inc. v. Henry's Drive–In, Inc.*, 353 F.Supp. 389, 392 (W.D.N.Y.1973).

In short, then, "the question is whether the amount of business in issue is so little as to be insignificant." *Star Lines Ltd. v. Puerto Rico Maritime Shipping Authority*, 442 F.Supp. 1201, 1205 n. 10 (S.D.N.Y.1978). Furthermore, the activity complained of need not be related to the transactions upon which venue is predicated. *Id.*

Applying Section 12 of the Clayton Act so as to effectuate its remedial purpose, the Court finds that A/E Systems is transacting sufficiently substantial business within this district to support venue under § 12. It is undisputed that since 1984, the defendant has received nearly one million dollars in revenues in New York State. A/E Systems states that from its 1988 trade show, it earned $70,500 from New York City business, and from its 1987 tradeshow, it earned $59,714 from New York City businessmen. Defendant's Reply Mem. at 8.[4]

Courts have held that such dollar volume alone is sufficient to establish that a defendant is "transacting business" in the forum district. *See, e.g., McCrory Corp. v. Cloth World, Inc.*, 378 F.Supp. 322, 324 (S.D.N.Y. 1974) (Pollack, J.) ("purchases of more than a quarter million dollars over a three year period would seem on their face to be "substantial" for jurisdictional purposes"); *J. & B. & S. Restaurant Corp., supra*, 353 F.Supp. at 392 (defendant was "transacting business" when business amounted to $71,386 in one year, and $57,288 in the next year, less than two percent of the company's business in each year); *Fashion Two Twenty, supra*, 339 F.Supp. at 841 ($30,000

---

**4.** Defendant notes that these figures are lower than those presented by plaintiff. Plaintiff claims that defendant's revenues from New York City were approximately $87,500 for 1988 and $95,000 for 1987. Plaintiff's Mem. at 7.

The Court finds that the difference between the figures presented by plaintiff and defendant is immaterial since even the lowest figures constitute "transacting business."

in annual sales was sufficient to constitute "transacting business").

In addition to the defendant's New York sales figures, defendant has the following contacts with the Southern District of New York:

1. Defendant has advertised on a regular basis in more than 40 publications in this district on a regular basis, and has visited at least some of these publications' offices in New York on a yearly basis;

2. Defendant's list of prospective tradeshow attendees, to which defendant mails all of its promotional materials, includes at least 2,500 residents of New York, of which at least 1,900 are from this district;

3. Defendant has purchased mailing lists from New York City's Gralla Publications, and has discussed selling its tradeshow to Gralla Publications;

4. Defendant's officers visit this district to solicit business at other New York City tradeshows and to conduct other business;

5. Several vendors and participants at defendants' tradeshows are from New York State—561 architects, engineers and contractors from New York State attended defendant's 1988 show; 1,574 (3.5% of total) architects, engineers and contractors from New York State attended defendant's 1987 show;

6. In 1988, defendant provided prospective New York attendees with a toll free number for use when calling from New York to register for A/E System's Chicago show. For at least one of defendant's shows, the official

travel agent for all exhibitors and attendees was a New York travel agency; and

7. Defendant has hired a New York City public relations firm and a New York City consultant to work on defendant's tradeshow.

■ Based upon the above contacts, as well as defendant's New York sales figures, the Court concludes that defendant is "transacting business" in New York and, consequently, venue is proper in this case.[5]

### B. Adequacy of Anti-trust Counts of Complaint

The Supreme Court has established a rigorous standard for dismissing an antitrust complaint for failure to state a claim:

> We have held that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–02, 2 L.Ed.2d 80] (1957) (footnote omitted). And in antitrust cases, where "proof is largely in the hands of alleged conspirators," *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473 [82 S.Ct. 486, 491, 7 L.Ed.2d 458] (1962), dismissal prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.

*Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Applying this standard to the present case, the Court finds that plaintiff has properly plead its antitrust claims.

---

**5.** Because the Court finds that plaintiff has properly pled its antitrust claims, *infra,* the Court need not determine whether venue is proper under the general venue provisions. The Court notes, however, that venue also is proper in this district under 28 U.S.C. § 1391(b). "Under the standard applied in this district, the 'weight of contacts' of the defendant with regard to the action are assessed, and venue is proper in this district [under § 1391(b)] if a 'substantial' part of the claim arose there." *Business Trends Analysts v. Freedonia,* 650 F.Supp. 1452,

1457 (S.D.N.Y.1987) (Weinfeld, J.) (a substantial part of plaintiff's unfair competition claim arose in the district where 9% of defendant's mailing list was New York addresses and an independent contractor sold defendant's products in New York). This test is satisfied in the present case because the property which defendant allegedly seeks to destroy, plaintiff's AEC EXPO, is located in New York City. *See also Honda Assocs., Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889 (S.D.N.Y.1974).

■ Defendant alleges that Count I of the Complaint, which alleges a violation of § 1 of the Sherman Act, 15 U.S.C. § 1, should be dismissed because plaintiff has failed to allege that at least two persons have acted in concert to accomplish an unreasonable restraint of trade. This allegation is plainly incorrect. Paragraph 30 of plaintiff's complaint states:

Upon information and belief, while A/E Systems was threatening vexatious and harmful litigation against Expoconsul in an effort to exclude Expoconsul from the relevant A/E/C systems tradeshow market and submarkets, A/E Systems was deliberately and intentionally combining, conspiring and contracting, and continues to combine, conspire, and contract, in restraint of trade, with A/E/C systems tradeshow exhibitors, attendees, speakers, suppliers and others to boycott and otherwise refuse to deal with Expoconsul with respect to Expoconsul's A/E/C systems tradeshow.

The complaint thus alleges concerted action to boycott plaintiff's tradeshow, activities which could constitute an unreasonable restraint of trade under the Sherman Act. *See Federal Trade Commission v. Indiana Federation of Dentists,* 476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986). Evidence of the specific identity of exhibitors, attendees, speakers and suppliers who allegedly have acted in concert with the defendant, is largely in defendant's hands. Plaintiff should be allowed to conduct full discovery in order possibly to further substantiate such claims. Thus, the court will not dismiss Count I of the complaint.

The defendant also claims that Count II of the complaint, which alleges a violation of § 2 of the Sherman Act, 15 U.S.C. § 2, should be dismissed because the defendant has no monopoly power sufficient to exclude plaintiff from the A/E/C tradeshow market. Essentially, defendant denies plaintiff's allegations of monopolization. Plaintiff, however, has properly plead its monopolization claims in ¶¶ 17–18 and ¶ 33 of its complaint and, thus, has not failed to state a claim for which relief may be granted. Thus, defendant's motion to dismiss is denied.

### C. *Forum Non Conveniens*

■ The defendant has moved to have this action dismissed or transferred pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). These statutes provide as follows:

For the convenience of the parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any other district or division in which it could have been brought.

28 U.S.C. § 1406(a). Since venue is proper in this district, there is no basis for either dismissing this action or transferring it under 28 U.S.C. § 1406(a).

Courts will not grant a discretionary transfer under 28 U.S.C. § 1404(a) "[a]bsent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court...." *General State Authority v. Aetna Casualty and Surety Co.,* 314 F.Supp. 422, 423 (S.D.N.Y.1970). This burden is "especially heavy in antitrust suits, where plaintiff's choice of forum is entitled to particular respect." *Star Lines, Ltd., supra,* 442 F.Supp. at 1207. *See also Merrill Lynch v. Rajcher,* 609 F.Supp. 291, 293 (S.D.N.Y.1985) ("The venue provision of the [Securities] Exchange Act was designed to allow the plaintiff the widest possible choice of forum, which will not be disturbed unless the movant shows the balance of convenience and justice weighs heavily in favor of transfer").

Defendant clearly has not met this heavy burden. Defendant's principle reason for transfer is that its primary location is in Connecticut. It is difficult to accept defendant's claim that this district is inconvenient, since the Connecticut to New York City commute is not overly burdensome and defendant has had no apparent difficulty traveling into this district to transact

business. Therefore, defendant's motion to have this case dismissed or transferred is denied.

### III. *Conclusion*

For the reasons set forth above, defendant's motion is denied in its entirety.

SO ORDERED.