Shirley **GOLDSTEIN, Individually and as Custodian for Richard Goldstein, under State of New York Uniform Gifts to Minors Act, Plaintiff,**

v.

**RUSCO INDUSTRIES, INC., a Delaware corporation, and Jack Catain, Jr., Defendants.**

**No. 71 C 1556.**

United States District Court, E. D. New York.

Dec. 28, 1972.

Henkin and Henkin, by Leonard M. Henkin, Mount Vernon, N. Y., for plaintiff.

Dickstein, Shapiro & Galligan, by Arthur J. Galligan, New York City (Judah Best, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Defendants have moved before answer under 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Central District of California. For the reasons which follow, the motion must be denied.

Plaintiff, Shirley Goldstein, suing individually and as custodian for her son Richard, instituted this action seeking damages for alleged violations of the federal securities laws by defendants, Rusco Industries, Inc. ("Rusco") and Jack Catain, Jr. She seeks to recover $3,643.14, the purchase price of 230 shares of allegedly valueless Rusco common stock, as well as punitive damages, costs of the action and counsel fees.

Defendant Catain has been chairman of the board, president and chief executive of Rusco since November 30, 1967. Rusco, originally incorporated in Ohio, was reincorporated in Delaware in 1965, but its executive offices are located in Los Angeles, California. It is engaged in the manufacture and sale of building products, various types of metal bed frames, security control devices and in the custom precision machining of metal parts. Its operations are far-flung, involving over 20 subsidiaries, two of which are centered in New York. The properties utilized in these operations are located in seven states and Canada.

Rusco has approximately 1,400 employees, of which 17 are executive personnel. Eight of these executives are employed in the Los Angeles office, and

are California residents. No executive employees are residents of New York.

Plaintiff's action is grounded in §§ 5, 12 and 17 of the Securities Act of 1933 ("1933 Act"), §§ 10(b), 15(b) and 15(c) of the Securities Exchange Act of 1934 ("1934 Act") and Rules 10b–3, 10b–5, 15c1–4, 15b1–2 and 15c1–7.[1] The activities said to result in violations of the federal securities laws involved allegedly misleading statements and representations in press releases, brochures, annual reports and letters to stockholders. These statements related to the invention, development, manufacture and sale of a number of component elements of a credit card security system.

Plaintiff's action follows an investigation by the Securities and Exchange Commission ("SEC"). The SEC filed an action on June 21, 1971 involving charges substantially similar to those herein against Rusco and Catain in the Southern District of New York. The case was settled by a consent judgment entered August 5, 1971. The consent decree, according to defendants, has resulted in the instituting of nine other similar actions.[2]

■■ A motion to transfer under § 1404(a) is addressed to the sound discretion of the court. United States v. General Motors Corp., 183 F.Supp. 858, 860 (S.D.N.Y.1960). "In exercising its discretion, the court will ordinarily give great weight to plaintiff's choice of forum, and will look to the defendant to provide cogent reasons why transfer would be appropriate." Erving v. The Virginia Squires Basketball Club, 349 F.Supp. 709 (E.D.N.Y.1972). "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." Van Dusen v. Barrack, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1963). In sum, defendants have "the burden of showing that the transfer is warranted, and unless the balance of conveniences clearly favors the [defendant], [plaintiff's] choice of forum will not be disturbed [citations omitted]." Maheu v. Reynolds & Co., 282 F.Supp. 423, 426 (S.D.N.Y.1967).

■ A transfer motion presents two basic questions: (1) whether the action sought to be transferred "might have been brought" in the proposed transferee forum, and (2) whether the transfer would best serve the convenience of parties and witnesses and the interest of justice. Schneider v. Sears, 265 F.Supp. 257, 261 (S.D.N.Y.1967). Plaintiff understandably does not deny that the action could have been instituted in the Central District of California.[3] How-

1. Plaintiff alleges that defendants "have been (1) employing devices, schemes and artifices to defraud, (2) making and causing the omission of material facts necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, and (3) engaging in and causing acts, practices and a course of business which had the tendency to and did operate as a fraud and deceit upon prospective purchasers of the securities of" defendant Rusco.

2. Three lawsuits were originally filed in the United States District Court for the Central District of California, three actions in the United States District Court for the Southern District of New York, one action in the United States District Court for the Northern District of Illinois, one action in the Superior Court of the State of California, and one action in the Delaware Court of Chancery. One Southern District action was dismissed. The Delaware suit has been stayed pending determination of the California actions. Three actions, two from the Southern District of New York and one from the Northern District of Illinois, were transferred to the Central District of California, on consent of the respective plaintiffs.

3. The 1933 Act provides in pertinent part, 15 U.S.C. § 77v:
"Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."

ever, she strenuously argues that the interests of justice would not be served by transferring the action.

■ The criteria applicable to assessing the balance of conveniences include (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the general interests of justice. .Schneider v. Sears, *supra* at 263. Defendants' arguments put into question all the above considerations, except for the fourth one.

*The Convenience of Parties and Witnesses*

Plaintiff is a resident of Flushing, New York. Defendant Catain is a California resident. Rusco, a Delaware corporation with principal place of business in California, has operations national in scope.

In defendants' view, the principal witnesses in this action are likely to be key management employees of the company, most of whom are located in California. They assert that in order to permit these witnesses to testify in New York Rusco would have to suspend a portion of its businesses during the time they are required to be in this jurisdiction. Three other witnesses, all of whom reside in the Los Angeles area, are likely to be called to testify in this action: Walter Barney, the inventor of the credit card system in question; Al Sweitzer, a former Rusco vice president who was in charge of and supervised the development of the system; and Patrick Koughan, a public relations consultant who prepared various of the publications in controversy.

Plaintiff does not deny that these three as well as Rusco's management employees will be important witnesses, nor that prosecution of the action in this district may seriously inconvenience them. But in her view, a significant number of witnesses are located in this jurisdiction: (1) the employees of the SEC and American Stock Exchange ("Amex") who conducted investigations into Rusco's activities, (2) New York brokers who will testify regarding the effect of the statements in question upon the market in New York and upon the price of Rusco stock, and (3) plaintiff herself. Thus, plaintiff maintains that trial in the Central District of California would severely inconvenience these witnesses.

Although the testimony of the California witnesses will probably surround the core of plaintiff's claim, no clear imbalance exists as to convenience of the parties or witnesses.

*Ease of Access to Sources of Proof*

Defendants strongly maintain that California is the locus for nearly all the non-testimonial sources of proof in this case. They point out that all relevant corporate records, voluminous in scope, are located in California. These documents include those in possession of its accounting firm. The documents were deposited in a central depository pursuant to an order of the United States District Court to which defendants seek to transfer this action. There is some

The 1934 Act provides in pertinent part, 15 U.S.C. § 78aa:
"Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."
The allegations of the complaint clearly indicate that the Central District of California is a district satisfying the foregoing venue provisions in nearly all, if not all, the possible bases set forth therein.

dispute as to how long defendants are to maintain the depository, since the district judge's order was to expire on April 30, 1972.[4]

Substantially all Rusco's corporate papers, records, accounts, financial data, legal opinions and documents are located in Los Angeles. Consequently, defendants argue that the transporting of Rusco's records and written material would force it to suspend business in many, if not all, operations. Retention of this material in the Eastern District of New York, it is claimed, "would only serve to continue the suspension and interruption of the Company's business for a longer period of time, thus causing greater detriment to the Company."[5]

Plaintiff concedes that transportation of the actual documents might be disruptive; she maintains that copies of the papers can be made, and hence disruptions would be unnecessary.[6] While photocopying might be expensive were all Rusco's files to be copied, a combination of pre-trial discovery, and selective copying of documents required for daily business operations would clearly minimize the costs involved.

On balance, a California court would provide a substantially easier access to documentary proof.

### The Cost of Obtaining Willing Witnesses and Trying the Case

As previously indicated defendants object to the direct and indirect costs of transporting the California witnesses, particularly the management employees. They also point to the expenses incident to transporting documentary evidence from California to New York.

Plaintiff contends that a transfer would result in prohibitive expenses in relation to the recovery sought, and would constitute the death knell of the action. In balancing these costs the court cannot overlook the relative means of the parties. Apposite is Schmidt v. American Flyers Airline Corp., 260 F. Supp. 813, 814 (S.D.N.Y.1966), in which Judge McMahon noted that plaintiff was a person of modest means and could not "match resources with defendant." Moreover, Judge McMahon disregarded claims similar to those here raised as to the costs of obtaining employee testimony:

> All of these witnesses are under defendant's control and can testify in New York, if defendant desires. We are not convinced that defendant would suffer any oppressive or unusual expense or inconvenience in transporting its own employees to New York, where it does business.

As the California witnesses, with three exceptions, are employees of Rusco, the balance of costs would clearly favor plaintiffs.

### Interests of Justice in General

Defendants raise two strong arguments why justice would best be served by a transfer. Emphasizing the six nearly identical cases consolidated and pending in the Central District of California,[7] they argue that transfer would avoid needless duplication of effort by counsel and the courts. Yet, the fact that three cases have been transferred by other federal courts to the Central District of California does not bind this court. All three were transferred by consent of the parties.

---

4. Exhibit 3, annexed to defendants' motion.

5. Affidavit of Jack Catain, Jr., at 10.

6. Plaintiff cites in this connection Blue Bell, Inc. v. Jaymar-Ruby, Inc., 311 F. Supp. 942, 943 (S.D.N.Y.1969), in which the court concluded:
   . . . [P]re-trial discovery is certain to reduce the volume of documents which must be offered as proof at trial. As to those documents which must be produced, there is no apparent reason why disruption of defendant's business files cannot be obviated "via the modern miracle of photographic reproduction." Herbst v. Able, 278 F.Supp. 664, 667 (S.D.N.Y.1967).

7. See n. 2 *supra*.

■■ The court is not unmindful of the

. . . strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided. Wyndham Associates v. Bintliff, 398 F.2d 614, 619 (2 Cir. 1968).

However, the court is also in agreement with Judge McMahon's statement in *Schmidt, supra* at 816, that

[t]here are other ways of avoiding a multiplicity of suits and duplication of discovery proceedings than relegating local citizens to the burdens of presenting their claims in remote jurisdictions.

Unlike nearly all the cases relied on by defendants, this case is not a class action or derivative suit. In such suits, a plaintiff claims to act on behalf of other individuals or on behalf of a corporation. In either capacity, it would ill behoove the plaintiff to overemphasize personal considerations in opposing a motion to transfer. But where, as here, a plaintiff sues only upon an individual claim, the interests of justice are hardly served by substantially increasing the plaintiff's burden in order to enhance whatever benefit defendants may derive from the willingness of other plaintiffs, differently situated, to sue in California or to have their suits transferred there.[8]

The crux of defendants' arguments is that all of the facts underlying plaintiff's complaint are rooted in Los Angeles, California, and that New York has little or no nexus to these facts. Plaintiff contests this characterization on at least four grounds. First, the SEC action was filed and settled in New York. Second, Rusco's stock is listed on the American Stock Exchange here, and hence "defendants sought out the advantages to be derived from a security market in New York and they voluntarily came into New York for that purpose. . . . "[9] Third, the stock was purchased and certificates were issued in New York. Fourth, although defendants may have spoken and written in California, "the papers were sent from California to New York for dissemination in New York to affect the market conducted in New York and were given distribution through news media located in New York and to the brokers located in New York."[10]

■ In the court's view it would be neither inconvenient nor unjust for defendants to be required to defend this action in New York. Defendants would suffer no more harm than that suffered by any defendant sued in a forum not of his own choosing, while plaintiff would be seriously prejudiced by a transfer to a forum over 3000 miles away.

Accordingly, it is ordered that defendants' motion be denied.

---

8. Defendants imply that several of the California actions are class actions. However, the district judge's pre-trial order, annexed to defendant's motion, reserved decision on motion made before him to allow maintenance of a class action. Consequently, this court does not pass on the effect that a pre-existing class action would have as a consideration in determining a transfer motion in a non-representative action.

9. Affidavit of Leonard M. Henkin, at 3.

10. Affidavit of Leonard M. Henkin, at 5.