C.I.S. OF PINE BLUFF, INC., Debtor in Possession, Plaintiff,

v.

ALLTEL CELLULAR ASSOCIATES OF ARKANSAS LIMITED PARTNERSHIP, Alltel Mobile Communications of Arkansas, Inc., Alltel Mobile Communications, Inc. and Alltel Central Arkansas Cellular Limited Partnership, Defendants.

No. 94 Civ. 2387 (RWS).

United States District Court, S.D. New York.

Nov. 10, 1994.

Baer Marks & Upham (Neal S. Barlia, of counsel) and Salomon Green & Ostrow, P.C. (David Green, of counsel), New York City, for plaintiff.

Hahn & Hessen (Gabriel B. Schwartz, Anthony C. Acampora, of counsel), New York City, for defendants.

### OPINION

SWEET, District Judge.

Defendants Alltel Cellular Associates of Arkansas Limited Partnership, an Arkansas Limited Partnership, Alltel Mobile Communications of Arkansas, Inc., Alltel Mobile Communications (collectively "Alltel") have moved to transfer this action to the United States District Court for the Eastern District of Arkansas pursuant to 28 U.S.C. § 1404(a) (1993). The motion to transfer to the United States District for the Eastern District of Arkansas is granted on the grounds, as set forth below, that such a transfer would serve the interests of justice.

### The Parties

Plaintiff ("CIS–Pine Bluff"), is a cellular telephone company organized under the laws of the State of Arkansas which maintains its financial management services and its parent company's headquarters in New York City. CIS–Pine Bluff is engaged in the wireline cellular telephone business in Pine Bluff, Arkansas. CIS–Pine Bluff is one of fourteen affiliated cellular telephone companies (collectively, the "Debtors") that filed voluntary Chapter 11 petitions for reorganization in this district on September 8, 1992.

Defendant Alltel is organized under the laws of Arkansas and maintains its headquarters in Little Rock, Arkansas. It is engaged in the cellular telephone business in Little Rock, Arkansas.

### Prior Proceedings

On September 9, 1992 the bankruptcy court signed an order directing the joint administration of the Debtors' cases. An order confirming the Plan, between the Debtors and the banks, was entered on March 15, 1994. The Bankruptcy Court for this district retains jurisdiction over this reorganization case until the plan is fully consummated. This will not happen before 1999.

CIS–Pine Bluff filed this action as an adversary proceeding in the bankruptcy court on February 18, 1994. At a pretrial conference on June 22, 1994, Alltel's motion, pursuant to 28 U.S.C. § 157(d) (1993), to withdraw the adversary proceeding from the bankruptcy court was granted without opposition from CIS–Pine Bluff.

The complaint in the underlying action asserts ten separate claims for relief against Alltel for: unlawful price discrimination under Arkansas law for allegedly selling or furnishing cellular telephone roaming services at a lower rate in one section of Arkansas than in another with the intent to destroy

the competition of CIS–Pine Bluff; leveraging monopoly power into an adjacent market both by its actions locally with McCaw, its local competitor, and with regard to activities surrounding the bankruptcy proceedings; attempted monopolization; conspiracy to monopolize; an injunction against further unlawful conduct; conversion of CIS–Pine Bluff's property by intentionally interfering with CIS–Pine Bluff's right of possession to its property; interference with the contractual relations and/or business expectancy both by mismanaging the local switching system and by establishing lower than market rate roaming charges with CIS–Pine Bluff's local competitor; turnover of property of the estate including the CIS–Pine Bluff's subscriber lists and other property in Alltel's possession; breach of contract in failing to perform appropriately under the Maintenance and Operating Agreement including failing to maintain the equipment in good working order and failing to provide basic and enhanced switching services to the Pine Bluff system; and negligence for failing to perform its duties under the Maintenance and Operating Agreement.

This motion for transfer followed and was heard and considered submitted on September 14, 1994.

### Facts

Cellular telephone systems comprise a number of small and contiguous geographic areas or "cells", each of which contains a transmitter/receiver that can communicate by radio with mobile telephones within the cell. Each transmitter/receiver is connected to a central switching station, which is, in turn, connected to the nationwide landline telephone network. When a subscriber dials a number, a radio signal is sent to the cell's transmitter/receiver, from which it is relayed to the switching station. The switching station completes the call by connecting the subscriber with the landline telephone network or directly to another mobile unit. Incoming calls are received by the switching station, which then signals the transmitter/receiver in the appropriate cell to relay the call to the subscriber's telephone.

Under the Federal Communications Act, the FCC has defined 734 local cellular telephone markets in the United States, in each of which it has licensed two companies to supply service. One of them is authorized to use the "A" block radio frequency and the other to use the "B" block frequency. In each such market, the two licensees compete.

Alltel and CIS–Pine Bluff are both licensed by the FCC to operate "B" block cellular telephone systems in the Eastern District of Arkansas. Alltel is so licensed for the city of Little Rock and several adjacent rural areas, while CIS–Pine Bluff is licensed for the nearby city of Pine Bluff. Within their respective markets, both companies compete with an "A" block licensee, McCaw Cellular Communications, Inc. ("McCaw"). Under a reciprocal agreement dated October 16, 1987 (the "Roaming Agreement"), the subscribers of Alltel and CIS–Pine Bluff are each permitted to use the facilities of the other company when travelling into its territory. An intercompany "roaming" charge is made to the subscriber's home company for this service and is then passed through, in whole or in part, to the subscriber. Each company is free to set its own rates for roaming service, but the rates set by one of them have generally been matched by the other.

Prior to January 1994, CIS–Pine Bluff did not have its own switching station and did not itself perform maintenance on its system. Instead, under an agreement dated February 6, 1989, ("the Maintenance and Operating Agreement"), Alltel provided CIS–Pine Bluff with switching and related record-keeping services and contracted to maintain the Pine Bluff system in good working order and repair. In August 1993, Alltel terminated this agreement, on six months written notice, effective February 6, 1994. In January 1994, CIS–Pine Bluff installed its own switching station and placed it in operation.

After the Debtors filed for reorganization, Alltel entered into a consortium with several other major telephone companies, including Bell South Enterprises, Inc. ("Bell South"), based in Georgia, Southwestern Bell Corporation ("Southwestern Bell"), based in Texas, and General Cellular Corporation ("GCC"), based in the State of Washington (the "Consortium"). The consortium filed a plan in the bankruptcy court which was rejected.

### The Action Will Be Transferred To The Eastern District of Arkansas

28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ Factors which determine whether a case should be transferred under § 1404 are: (1) the place where the operative facts occurred; (2) the convenience to parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice. *Viacom Intern. v. Melvin Simon Prods.*, 774 F.Supp. 858, 867–68 (S.D.N.Y.1991); *Don King Prods., Inc. v. Douglas*, 735 F.Supp. 522, 533 (S.D.N.Y.1990); *see also Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967); *Richardson Greenshields Secur., Inc. v. Metz*, 566 F.Supp. 131, 134 (S.D.N.Y.1983). With these factors in mind, a transfer of this case to the Eastern District of Arkansas is appropriate.

■ A transfer should not be granted "absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court...." *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth.*, 442 F.Supp. 1201, 1207 (S.D.N.Y.1978). This burden is "especially heavy ... in antitrust suits, where plaintiff's choice of forum is entitled to particular respect," *Star Lines*, 442 F.Supp. at 1207; *Sunshine Cellular v. Vanguard Cellular Systems*, 810 F.Supp. 486, 509 n. 11 (S.D.N.Y.1992). This heavier burden applies particularly to the antitrust claims in this action which derive principally from the activities of the Consortium and to the activities with McCaw. While there is not a scientific method for arriving at the final weight of the burden, as to the three out of ten claims that sound in antitrust, Alltel has met this heavier burden.

■ The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257 (S.D.N.Y. 1974); *Essex Crane Rental Corp. v. Vic Kirsch Const. Co.*, 486 F.Supp. 529 (S.D.N.Y. 1980); 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3851 (1986). Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district. *Viacom Intern*, 774 F.Supp. at 868; *Computer Horizons Corp. v. Knauer*, 483 F.Supp. 1272 (S.D.N.Y.1980).

The events at issue and most of the pertinent witnesses are in Arkansas.

The state claims for price discrimination, breach of contract, conversion, and negligence constitute the core of this case, and the events in issue are the activities surrounding the servicing of the Pine Bluff system. The allegations that Alltel mismanaged and neglected the switching system, that it failed to properly administer and maintain CIS's subscriber data base, and that it intentionally misappropriated revenue belonging to the Pine Bluff system all involve activities and effects in Pine Bluff. Additionally, there are allegations involving the "sweetheart" deal with McCaw. These allegations include that Alltel enlisted the aid of McCaw, its chief competitor in Arkansas, in its scheme to drive CIS–Pine Bluff out of business; that together they agreed to lower the roaming rates for customers who used their systems. Finally, plaintiff alleges that Alltel sent a letter to its customers and to CIS–Pine Bluff customers urging them to discontinue service and switch to McCaw's system.

Virtually all of the relevant witnesses to these events are in the Eastern district of Arkansas. Many of the third-party witnesses are beyond the subpoena powers of this court but not of a court in Arkansas. These include the local Alltel and CIS–Pine Bluff customers who may testify and at least five former Alltel employees who still live within the Eastern District of Arkansas.

CIS–Pine Bluff parent, CIS, is headquartered in New York. Financial management of CIS–Pine Bluff's operations take place in New York and the operational headquarters

for CIS–Pine Bluff (and all other CIS debtor affiliates) is located in Greenwich, Connecticut. While several employees·at these offices signed agreements with Alltel and monitored the Pine–Bluff activities, it appears that the vast majority of correspondence and negotiation involving the roaming services, the maintenance of the switching service, and the monitoring of customer services were handled locally in Arkansas. Several party witnesses for CIS–Pine Bluff are employed by CIS in New York. All of the Alltel party witnesses and at least half of the CIS–Pine Bluff party witnesses are located in the Eastern District of Arkansas.

The federal antitrust claims (three of the ten claims asserted) center on the McCaw dealings and the Consortium's activities surrounding the bankruptcy proceedings. Witnesses to the allegations involving the McCaw dealings will include local customers, local Alltel and CIS–Pine Bluff employees, McCaw employees in Seattle and one or two CIS employees based in New York. According to CIS–Pine Bluff, the claims relating to the Consortium call for witnesses with knowledge of the bankruptcy proceeding, including three banks which are headquartered in the Northeast and the four members of the Consortium that are not.

A substantial number of witnesses, not controlled by either party, live outside of the subpoena power of either this District or the Eastern District of Arkansas and will be equally available for discovery and testimony whether the action is in New York or Arkansas. In addition, the majority of those witnesses are closer to the Eastern District of Arkansas than to this District. Employees of McCaw, located in Seattle, and representatives from organizations relevant to the Consortium claim including Southwestern Bell (Texas), GCC (California), and Bell South (Georgia) are potential witnesses. Greg Garrison, a former CIS–Pine Bluff employee who had primary responsibility for supervising and enforcing Alltel's compliance with its obligations under the Maintenance and Operating Agreement, now lives in California and Don Behrman, currently a resident of Texas, was the CIS–Pine Bluff employee with primary responsibility for negotiating the Agreement with Alltel. In addition, there are corporate entities in Florida and Illinois,

that may be called upon for testimony in this case. Only Michael Young, the mediator in the bankruptcy proceeding and the three banks involved in the reorganization plan are located closer to New York. Of those, only the mediator is based in New York.

Alltel and CIS–Pine Bluff employees and customers are based in Arkansas with knowledge of the events at issue and the demeanor of these witnesses before the trier of fact, with an opportunity to appraise credibility, may well mean the difference between the acceptance and rejection of crucial testimony. *Oil & Gas Ventures—First 1958 Fund Ltd. v. Kung*, 250 F.Supp. 744, 756 (S.D.N.Y. 1966).

■ In addition to the convenience a transfer would serve to the parties and witnesses, the fact that many of the claims may be governed by Arkansas law is a factor tilting the proper choice of venue to Arkansas. It is appropriate for a case to be tried in a forum at home with the governing law, *Ferens v. John Deere Co.*, 494 U.S. 516, 530, 110 S.Ct. 1274, 1276, 108 L.Ed.2d 443 (1990). Where, as here, the operative facts of the case have little connection with the district where the suit is pending, this factor supports transfer, and plaintiff's forum choice is weakened. *Arrow Elecs., Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 267 (S.D.N.Y. 1989).

■ Citing *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 989 (E.D.N.Y.1991) and *Goldstein v. Russo Indus. Inc.*, 351 F.Supp. 1314, 1318 (E.D.N.Y.1972), CIS–Pine Bluff urges the disparity between the means of the two parties as a factor in determining where the case should proceed. As opposed to the cases cited by plaintiff which involved one or two individuals in actions against corporations, here both corporate parties are substantial and the relative wealth need not be considered in determining venue. *See Arrow Elecs. Inc. v. Ducommun, Inc.*, 724 F.Supp. 264 (S.D.N.Y.1989). Alltel is by the plaintiff's admission a two (2) billion dollar corporation. The bankruptcy judge in the bankruptcy proceeding assessed the going concern of CIS as $110,000,000. In such circumstances the relative means of the parties is not a significant factor to be considered. Were it to be considered, there has

been no showing that a transfer would be more costly for the plaintiff. *See Arrow Elecs.*, 724 F.Supp. at 266.

 In addition, the continuing jurisdiction of the Bankruptcy Court in this district over the reorganization plan does not militate for keeping this adversary proceeding here. No relationship has been established between further proceedings involving the reorganization plan and the resolution of claims asserted by CIS–Pine Bluff. As in *McCrory v. 99 cents Only Stores*, 160 B.R. 502 (S.D.N.Y.1993), a motion to change venue of an adversary proceeding in a Chapter 11 case, on the grounds of the convenience of witnesses, is appropriate even before any plan was confirmed.

In sum, the gravamen of the activities are in Eastern Arkansas, the parties are largely there, the majority of witnesses are in Eastern Arkansas or closer to that District than this one, and the majority of the claims will be governed by the law more familiar to that forum. In the interest of justice and for the reasons elaborated above, the action should be transferred.

 Finally, an action can be transferred to another district if it could have been brought in that district initially. That is, the defendants must have been amenable to personal jurisdiction in the transferee district and venue must be appropriate there. *Am. Tel. & Tel. Co. v. Milgo Elec. Corp.*, 428 F.Supp. 50, 52 (S.D.N.Y.1977). The Eastern District of Arkansas satisfies both of these requirements. Personal jurisdiction existed over Alltel in the Eastern District of Arkansas at the time this suit was initiated as their principal places of business is in that district. And, for the same reason venue in that district is proper under 28 U.S.C. § 1391(b)(1) and (2).

It is, therefore, appropriate to transfer this action to the Eastern District of Arkansas.

*Conclusion*

The motion to transfer the action is granted.

It is so ordered.